UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MAGNOLIA COOPER,                                    Civ. No. 15-2682 (JRT/JSM)

    Plaintiff,                          **REPORT AND RECOMMENDATION**

v.

MINNESOTA DEPARTMENT OF HUMAN SERVICES,

    Defendant.

    The above matter came before the undersigned on defendant's Motion to Dismiss [Docket No. 13].   Plaintiff is self-represented.   Defendant is represented by Ozioma Oji, Esq.  This matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  [Docket No. 20].

## I.    INTRODUCTION AND BACKGROUND

    Pursuant to 42 U.S.C. § 1983, plaintiff Magnolia Cooper sued the Minnesota Department of Human Services ("DHS")[1] claiming it denied her due process under the Fourteenth Amendment regarding events that apparently commenced in 1998, when her minor child was placed in the custody of Cooper's mother.  In lieu of answering, the DHS moved to dismiss the suit with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and failure to state a claim pursuant to Rule 12(b)(6).   For the reasons described below, this Court recommends granting the DHS's motion.

---

[1]    The caption of the SAC states that Cooper is suing the "Minnesota Department of Human Services (Dept. of Child Protection Services)."   Second Amended Complaint ("SAC"), p. 1 [Docket No. 7].

The following facts[2] as alleged by Cooper bear on the DHS's motion to dismiss. Cooper alleged that the DHS deprived her of her due process rights under 42 U.S.C. § 1983 and also violated Minn. Stat. § 260C.301, which governs the termination of parental rights, when it wrongfully placed permanent custody of her minor child with the child's grandmother.   SAC, pp. 3-4.[3]  Cooper claimed that the DHS took these actions "seven days ago, 7 months ago, from 7 years ago, or in the first 7 years it happened." Id., p. 4.

The Register of Actions indicates that on July 15, 1998, there was a Child In Need of Protective Services ("CHIPS") hearing concerning Cooper's child held in the Hennepin County juvenile court.   Register of Actions, p. 7 [Docket No. 31].[4]  The petitioner in the action was Hennepin County.   Id., p. 1.  The CHIPS proceeding appeared to have been initiated because Cooper's child was sick and had been hospitalized at the Hennepin County Medical Center.   Id.  Cooper alleged that she called child protective services herself because of her child's illness.   SAC, p. 3.

---

[2]     The SAC is virtually incomprehensible.  In describing Cooper's claims, the Court has relied in part on a Register of Actions in the case of In re the Children of Magnolia Cooper & Robert Hanger, Hennepin County juvenile court File No. 27-J4-98-062561, which both Cooper and the DHS submitted in connection with the instant motion. [Docket Nos. 29-1, 31].  On a motion to dismiss, the Court may consider materials that are a matter of public record or necessarily embraced by the complaint without converting the motion into one for summary judgment.  Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003); Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  The Register of Actions reflects the events on which Cooper's Second Amended Complaint is based.  Therefore, it was "embraced by the complaint." It is also a public record.

[3]     Throughout this Report and Recommendation, the Court refers to the SAC by the page numbers assigned by the Court's CM/ECF system as the SAC does not contain consecutively numbered paragraphs.

[4]     When citing to the Register of Actions, the Court refers to the page numbers assigned through the CM/EFC system.

Cooper further alleged that her mother, the child's maternal grandmother, applied for and obtained custody of the child and that her child had been made a "ward of the state for medical reasons." Id., pp. 4, 7.  The SAC did not state when this change of custody occurred; however, the Register of Actions indicated that as of August 6, 1998, the child was in foster care.  Register of Actions, p. 6.  Cooper claimed that the State barred her from obtaining her child's medical records and prevented her from moving "anonymously" to anywhere but Wisconsin or Minnesota.  Id., p. 7.

Notes in the Register of Actions dated July 15, 1998, stated "the mother and child are from Madison, Wisconsin.  Dane Co., WI reportedly has an open child protection file on the child.  The child is very sick and required hospitalization at HCMC."  Register of Actions, pp. 7-8.  An arraignment was held in Hennepin County on August 6, 1998, and Cooper denied the allegations in the CHIPS petition.  Id., p. 6.  Notes relating to the arraignment stated: "County requests full psychological evaluation for mom and an order for release of Wisconsin psychiatric and psychological information.  Mom is now living at Harbor Lights shelter.  Mom has not routinely kept self medicated.  Visits with child have been twice per week.  Child is doing well in foster care.  Child started occupational and speech therapy."  Id.  A note dated August 31, 1998, relating to a court hearing indicated that visits between Cooper and her child were "not going well" and the Department of Child and Family Services was recommending that the visits be suspended.  Id., pp. 6-7.  At a pre-trial hearing on September 21, 1998, it was noted that Cooper's child had medical requirements that needed to be addressed, Cooper had been living with her mother in Wisconsin, and Cooper admitted the CHIPS petition.  Id., p. 6.  An entry dated October 5, 1998, stated: "Dane Cty will supervise in WI.  M[om] to

stay in home of [mom's mom] . . . m[om] cannot move.  [Mom's mom] to assure m[om] goes to appts."  Id., p. 7.

The last event related to Cooper's case in Hennepin County occurred on January 11, 1999.  Id., pp. 5, 7.  A disposition hearing was held on that date and there is a note that "[c]hild is doing well in Dane County.  Dismiss."  Id., p. 7.  Judge Denise Reilly of the Hennepin County juvenile court terminated the court's jurisdiction on January 11, 1999.  Id., p. 5.

As best as the Court can determine, Cooper is alleging that the DHS (which did not have anything to do with the juvenile court proceedings) failed to notify Cooper of hearings regarding the permanent placement of her child with the child's maternal grandmother, and failed to reassess the placement and return custody of the child to Cooper.  Cooper further alleged that "the state" blocked her access to medical records and prevented her from initiating legal proceedings.  SAC, pp. 3, 4, 7, 9.  Again, as best as the Court can discern, it appeared that Cooper was alleging that she tried to get certain records relating to the Hennepin County proceeding and could not, because only the minor child's legal guardian, Cooper's mother, could access the records.  Id., p. 9.  Cooper apparently believed that her child had been "warded" to the Minnesota Department of Human Services.  Id., p. 7.  Cooper also appears to allege that she was denied certain "administrative hearings."  Id., p. 8.

The Court cannot determine if Cooper is alleging state law claims, in addition to the due process claims she has made under the Fourteenth Amendment.  For example, the SAC cited Minn. Stat. § 260C.301, (SAC, p. 3), which describes how the juvenile court terminates parental rights; Minn. Stat. § 363A.12, (SAC, p. 5), which prohibits

discrimination in public services; and Minn. Stat. § 518.68, (SAC p. 8), which describes the content of notices that must accompany "every court order or judgment and decree under this chapter or chapter 518A" regarding child support, spousal maintenance, custody or parenting time.  Chapter 518 is entitled "Marriage Dissolution" and Chapter 518A is entitled "Child Support."

Cooper stated that she was "seek[ing] relief from failure of State to make alternatives or to notify of how to retain legal rights and custody and other provisions the Department of Minnesota Human Service Administration appointed, otherwise granted through Compact."  Id., p. 10.

Cooper made no demand for relief in the SAC, but in her Second Amended Application to Proceed In Forma Pauperis, Cooper stated that she was seeking $7.0 million for "each victim" for a total of $14 million dollars.[5]  Second Amended In Forma Pauperis Application, p. 6 [Docket No. 8].

## II.    DHS'S MOTION TO DISMISS

The DHS moved to dismiss Cooper's lawsuit for lack of subject matter jurisdiction based on Eleventh Amendment immunity, the Rooker-Feldman doctrine, and the running of the statute of limitations.  The DHS further contended that Cooper's claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

In support of its argument that the Court lacked subject-matter jurisdiction over the lawsuit, the DHS first submitted that as a state agency, the DHS enjoyed Eleventh Amendment immunity from federal claims brought under § 1983.  Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mem."), p.3 [Docket No. 15]

---

[5]        Cooper did not identify the "victims."

(citing Hadley v. North Ark. Cmty. Tech. Coll., 76 F.3d 1437, 1438 (8th Cir. 1996)).  Any waiver of its Eleventh Amendment immunity had to have been express.  Id. (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  Here, Congress did not abrogate and the Minnesota Legislature did not waive the State's immunity concerning claims Cooper has raised.  Id. (citing Minn. Stat. § 1.05 (waiving immunity for certain types of claims, not presented in the SAC); DeGidio v. Perpich, 612 F.Supp. 1383, 1389 (D. Minn. 1985)).  As a result, the suit was barred by the Eleventh Amendment.  Id.

Second, the DHS contended that Cooper's lawsuit was barred by the Rooker–Feldman doctrine because the suit sought to have the federal court rule on the legality of the Hennepin County juvenile court's custody determination.  Id., pp. 3-4.  The Rooker-Feldman doctrine "precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling."  Id., p. 3. (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)).  According to the DHS, Cooper was asking for a determination that the state juvenile court's custody determination was wrong – a topic over which the federal court lacks subject matter jurisdiction.  Id., p. 4 (citing P.G. v. Ramsey County, 141 F. Supp. 2d 1220, 1230 (D. Minn. 2001) (a party wishing to attack the juvenile court's determination of parental rights must do so at the Minnesota Court of Appeals, not the federal district court)).

Third, the DHS submitted that the Court lacked subject matter jurisdiction over Cooper's claims because they were time-barred.  Id., pp. 4-5.  In a § 1983 claim, "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal

6

injury actions." Id., p. 4 (quoting Owens v. Okure, 488 U.S. 235, 235 (1989)). The DHS maintained that whether Minnesota's two-year statute of limitations for intentional torts or its general six-year statute of limitations applied to Cooper's § 1983 claims, the SAC pled events giving rise to Cooper's lawsuit that had occurred either seven or fourteen years ago, rendering her claims time-barred under either statute. Id., pp. 4-5.

Alternatively, the DHS moved for dismissal under Rule 12(b)(6), arguing that to the extent Cooper was complaining that the juvenile court committed errors with respect to the CHIPS hearings (for example, by failing to notify her of hearings, as alleged in the SAC, p. 3), those allegations failed to state a claim because it is the juvenile court, not the DHS, which notifies parties of hearing dates. Id., p. 6 (citing Minn. Stat. § 260C.151, subd. 2a). Likewise, to the extent that Cooper's lawsuit was based on Hennepin County's failure to return custody of her child to her, the DHS argued that only the county attorney can file a petition for the reestablishment of the legal parent and child relationship. Id., p. 7 (citing Minn. Stat. § 260C.329, subd. 3). Consequently, the DHS was not the proper party against whom this claim can be made. Id.

Cooper responded[6] that the DHS should not be immune from money damages under the Eleventh Amendment, citing Minn. Stat. § 466.02, which describes municipal tort liability and Minn. Stat. § 3.736, Minnesota's Tort Claims Act. Cooper attached a copy of the Minnesota Tort Claims Act to her response, and annotated it with explanations as to why the state Tort Claims Act applied to her claims. Pl.'s Mem. in

---

[6]   Cooper submitted a document entitled "Memorandum of Law in Support of Summary Judgment," [Docket No. 23], which this Court has interpreted as her response to the DHS's Motion to Dismiss and which the Court will refer to as "Pl.'s Mem. in Opp."

Opp., pp. 2-5.[7]  In response to the DHS's contention that the SAC failed to state a claim, Cooper copied the text of 28 U.S.C. § 2675, which requires the exhaustion of administrative remedies before a claim can proceed under the Federal Tort Claims Act. Id., p. 5.  Cooper also copied what appeared to be excerpts from a treatise regarding § 1983 claims.  Id., pp. 5-7.

Cooper appeared to argue that the DHS was not entitled to Eleventh Amendment immunity because its actions were intentional and undertaken with the State's "active authority."  Id., p. 12.  Cooper further seemed to suggest that if the case proceeded, she wanted to subpoena records that she believed would support her case.  Id., p. 13. Cooper did not respond to the DHS's arguments regarding the Rooker-Feldman doctrine or its claim that her suit was time-barred, except to state that "Defendant went on to express, Failure to State a Claim on which relief could be granted, Citing that even if wrong doing have been done, Time Limitations (discussed in answer) might apply . . . ."  Id., p. 10.

The DHS replied that Cooper had failed to show that it had waived its Eleventh Amendment immunity; the applicability of Minn. Stat. §§ 3.736 or 466.02; or that her claims were not time-barred.  Defendant's Reply Memorandum ("Def.'s Reply"), pp. 1-3 [Docket No. 24].

After Cooper filed her response and the DHS filed its reply, Cooper wrote to the Court asking that the hearing on the DHS's motion to dismiss be rescheduled because she was attempting to obtain records regarding the juvenile court proceedings.  Letter to Magistrate Judge dated February 18, 2016 [Docket No. 26].  In response, this Court

---

[7]   When citing to Cooper's responsive memorandum, the Court refers to the page numbers assigned through the CM/ECF system.

cancelled the hearing and determined that the motion would be decided on the written submissions of the parties.  Order dated February 16, 2016 [Docket No. 27].  The Court gave Cooper until February 29, 2016, to serve on the DHS and file with the Court the evidence described in her letter.  Id.  The Court gave the DHS until March 7, 2016, to respond to any additional submission by Cooper.  Id.

Cooper sent an additional submission to the DHS, but did not initially file it. Defendant's Memorandum in Response to Plaintiff's Additional Submission; Ex. 1 (copy of a letter dated February 26, 2016 and Register of Actions Cooper sent to the DHS) [Docket No. 28].  Ultimately, Cooper filed these materials on March 7, 2016 [Docket No. 31].  Like all of Cooper's submissions, the letter was very difficult to understand, but she appeared to acknowledge the DHS's arguments regarding subject matter jurisdiction and the statute of limitations.  Letter dated February 26, 2016.  Cooper stated that she had been denied an administrative hearing, although when and in what context was not clear.  Id.. p. 2.[8]  Cooper went on to state that in addressing "the State Subject Matter Jurisdiction question," she would "file through the Department of Justice and its Crime Victim Assistance Program for any redress or further or future inquiry."  Id., p. 3.

The DHS responded to this additional submission, stating that Cooper had failed to address the DHS's arguments in favor of dismissal and that even if she had been denied an administrative hearing, her claim was untimely as the final action reflected on the Register of Actions took place on January 11, 1999.  DHS Memorandum in Response to Plaintiff's Additional Submission, pp. 1-2 [Docket No. 28].  The DHS further

---

[8]     When citing to the February 26, 2016 letter, the Court refers to the page numbers assigned through CM/ECF.

noted that it is Hennepin County, not the DHS, that reviews out-of-home placement plans pursuant to state statute; therefore, DHS was not the proper party against whom Cooper could litigate.  Id., p. 2.

## III.   LEGAL STANDARDS

The DHS moved to dismiss Cooper's SAC under Rules 12(b)(1) and (6). "Subject matter jurisdiction . . . is a threshold requirement which must be assured in every federal case." Turner v. Armontrout, 922 F.2d 492, 493 (8th Cir. 1991). "[W]here jurisdiction does not exist the court, whether trial or appellate, shall dismiss the action . . . ." Williams v. Rogers, 449 F.2d 513, 518 (8th Cir. 1971), cert. denied, 405 U.S. 926 (1972), (citing Louisville and Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908)). Rule 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

"'A Court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" Branson Label, Inc. v. City of Branson, Mo., 793 F.3d 910, 914 (8th Cir. 2015) (quoting Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990)). "In a facial attack . . . the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal quotation and citation omitted).  On the other hand, in a factual attack to jurisdiction, the court may consider materials outside the pleadings and the non-moving party does not benefit from the safeguards of Rule 12(b)(6).  Id. (citing Hastings v. Wilson, 561 F.3d 1055, 1058 (8th Cir. 2008)).  The DHS has brought a facial challenge to subject-matter jurisdiction.

"It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction." Nucor Corp. v. Nebraska Pub. Power Dist., 891 F.2d 1343, 1346 (8th Cir. 1989).

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. In re Operation of Mo. River Sys. Litig., 418 F.3d 915, 917 (8th Cir. 2005) (citations omitted); see also Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Litigants also must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Bell Atlantic Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). To satisfy Rule 8, Twombly and Iqbal, "a complaint need not contain 'detailed factual allegations,' . . . ." United States ex rel. Raynor v. National Rural Utils. Coop. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012) (quoting Twombly, 550 U.S. at 555). However, "it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" Id. (citation omitted). The court is not bound to accept as true "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . or legal conclusions couched as factual allegations." McDonough v. Anoka Cty., 799 F.3d 931, 945 (8th Cir. 2015) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Accordingly, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556).

Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced.  See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).  See also Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (rejecting "merely general and conclusory allegations," and requiring that a "pro se complaint must contain specific facts supporting its conclusions.").

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

Stone, 364 F.3d at 915.

Consequently, a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." Id. (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).  In this regard, while the Court made every effort to understand Cooper's pleadings, it will not speculate regarding the meaning of those written submissions that are incomprehensible.

## IV.   ANALYSIS

### A.   Eleventh Amendment Immunity

"Under the Eleventh Amendment, federal courts lack subject matter jurisdiction over a claim against a state when that state has not consented to the suit.  See Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000); Seminole Tribe of Fla. v. Florida, 517

U.S. 44, 64-65 (1996).  "A suit by private parties seeking to impose a liability that must be paid from public funds in the state treasury is barred by the Eleventh Amendment." Bisciglia v. Lee, 370 F. Supp. 2d 874, 877 (D. Minn. 2005) (citing Edelman, 415 U.S. at 663).   Thus, "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought."  Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); see also Morstad v. Dep't of Corr. & Rehab., 147 F.3d 741, 743-44 (8th Cir. 1998); Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997).  When a lawsuit is barred by the Eleventh Amendment, the case must be dismissed for lack of subject matter jurisdiction.  Seminole Tribe, 517 U.S. at 64-65.

Congress did not abrogate the states' immunity by enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979), overruled on other grounds by Hafer v. Melo, 502 U.S. 21, 27 (1991).  In addition, the State of Minnesota has not waived its immunity from § 1983 claims, (Phillips v. Minnesota State Univ., Civ. No. 09-1659 (DSD/FLN), 2009 WL 5103233, *3 (D. Minn. 2009)), nor has Minnesota consented to suit.  See DeGidio, 612 F. Supp. at 1388-89 (waiver of immunity by a state will be found "only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.") (internal quotation and citation omitted).

"A state agency . . . may invoke the State's Eleventh Amendment immunity if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'"  Hadley v. North

Ark. Comty. Tech. Coll., 76 F.3d 1437, 1438 (8th Cir. 1996) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123, n.34 (1984)).

As a state agency, the DHS enjoys Eleventh Amendment immunity, and Cooper has not identified any Congressional abrogation of that immunity.  Nor has she raised any factual allegations showing that the DHS waived its immunity.  As a result, the Court concludes that the DHS is immune from suit.  See Uselman v. Minnesota Dep't of Human Servs., Civ. No. 11-2913 (PJS/JJG), 2011 WL 5520443, at *1 (D. Minn. Oct. 21, 2011) (noting that the only named defendant in the lawsuit was the DHS and the DHS is constitutionally immune from suit in federal court where there are no allegations in the complaint that the state consented to be sued); Geiger v. Minnesota Dep't of Human Servs., Civ. No. 13-2140 (JRT/LIB), 2013 WL 5596599, at *3 (D. Minn. Oct. 11, 2013) (the DHS is immune from suit pursuant to the Eleventh Amendment in the absence of evidence of Congressional abrogation of its immunity or its consent to suit); Allan v. Ludeman, Civ. No. 10-176 (ADM/JJK), 2011 WL 978768, at *15 (D. Minn. Jan. 18, 2011) (same); Latimer v. Minnesota, Civ. No. 09-3108 (JHK/JJK), 2010 WL 889937, at *2 (D. Minn. Mar. 8, 2010) (same).  Accordingly, the Court recommends dismissal of the suit based on lack of subject matter jurisdiction.  See Seminole Tribe of Fla., 517 U.S. at 64-65 (holding that when a lawsuit is barred by the Eleventh Amendment, the case must be dismissed for lack of subject matter jurisdiction).

### B.   Rooker-Feldman Doctrine

Even if this Court had determined that it had subject matter jurisdiction over Cooper's suit against the DHS, the Court concludes that to the extent Cooper is

attempting to obtain a judgement based on the juvenile court's allegedly erroneous custody determination, Cooper's claims are barred by the Rooker-Feldman doctrine.

The Rooker-Feldman doctrine provides that federal courts do not have jurisdiction over challenges to the final decisions of state courts, even where those decisions are alleged to be unconstitutional, because such review is the exclusive province of the United States Supreme Court. See 28 U.S.C. § 1257, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983) (holding "[t]he only court with jurisdiction to review decisions of state courts is the United States Supreme Court"). Under the Rooker-Feldman doctrine, a party is barred "from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994) (citing Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923)).

The key question in determining if a suit is barred by the Rooker-Feldman doctrine is whether the relief sought would "effectively reverse the state court decision or void its holding." Snider v. City of Excelsior Springs, Mo., 154 F.3d 809, 811 (8th Cir. 1998). Even if a lawsuit does not explicitly ask the federal court to overturn a state court decision, if the claims are "inextricably intertwined" with the state court judgment, then they are barred under the Rooker-Feldman doctrine. Lemonds v. St. Louis Cty., 222 F.3d 488, 493 (8th Cir. 2000). In other words, if a federal court plaintiff can only prevail to the extent that the state court judgment was wrong, then the Rooker-Feldman doctrine is implicated. Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1035 (8th Cir. 1999) (citing Charchenko, 47 F.3d at 983)).

15

Here, to the extent that Cooper is seeking money damages or other relief because of the state juvenile court's transfer of custody of her minor child to the child's grandmother, then those claims are barred by the <u>Rooker-Feldman</u> doctrine because it would require a determination by this Court that the state court erred in this determination. Dismissal of Cooper's claims are warranted based on the application of the <u>Rooker-Feldman</u> doctrine.

### C. <u>Statute of Limitations</u>

The SAC alleged that Cooper's child was placed with the child's grandmother "from 7 days ago, 7 months ago, from 7 years ago, or in the first 7 years that it happened." SAC, p. 4. Cooper did not respond to the DHS's contention that her claims, to the extent they exist, were time-barred. <u>See</u> Pl.'s Mem. in Opp.; Plaintiff's letter dated February 26, 2016.

Section 1983 does not have its own statute of limitations, but adopts the applicable state-law statute of limitations. <u>Hester v. Redwood Cty.</u>, 885 F. Supp. 2d 934, 944 (D. Minn. 2012) (citing <u>City of Rancho Palos Verdes, Cal. v. Abrams</u>, 544 U.S. 113, 123 n.5 (2005)). "The general rule in Minnesota is that a statute of limitations begins to run from the time an action can be commenced." <u>Leisure Dynamics, Inc. v. Falstaff Brewing Corp.</u>, 298 N.W.2d 33, 37 (Minn. 1980) (citing <u>Butler v. Minneapolis Police Relief Ass'n</u>, 283 Minn. 70, 74, 166 N.W.2d 705, 707 (1969)). In Minnesota, the statute of limitations for tort claims is generally six years, but is two years for intentional torts such as assault or battery. <u>Strandlund v. Hawley</u>, 532 F.3d 741, 746 (8th Cir. 2008) (citing Minn. Stat. §§ 541.05, subd. 1(5), 541.07(1)). "Whether Minnesota's two-year statute of limitations for intentional torts or general six-year statute of limitations

applies to § 1983 claims has been the source of inconsistent rulings." Hester, 885 F. Supp. 2d at 944. (citations omitted).   Nevertheless, because Cooper's suit fails under either limitations period, the Court concludes that it need not determine which period applies, because under any scenario her claims are untimely.

Although the SAC references events regarding the placement of Cooper's daughter with the child's grandmother "from 7 days ago, 7 months ago, from 7 years ago, or in the first 7 years that it happened," the facts before this Court indicate that the CHIPS proceeding began on July 15, 1998; at some point, thereafter, permanent custody of the child was awarded to Cooper's mother; and the jurisdiction of the Hennepin County Juvenile Court was terminated on January 11, 1999.   Register of Action, pp. 5, 7.[9]   Further, Cooper stated that she was aware of the juvenile court proceedings and objected to foster care placement.   SAC, p. 4.   Cooper also stated that she was present in court when "a plan" was reviewed and stipulated to.   Id., p. 9. Therefore, following the placement of her child with the child's grandmother and certainly as of January 11, 1999, when the Hennepin County juvenile court terminated its jurisdiction over the custody of the child, any suit by Cooper regarding the loss of the custody of her child had accrued.   As Cooper did not commence her suit until 2015, it is barred by the statute of limitations.

For all of these reasons, the Court has concluded that Cooper's claims are time-barred.

---

[9]     The Register of Actions is unclear regarding the transfer of custody to Cooper's mother.   Nonetheless, it is clear that at some point after the CHIPS proceeding began, the child the child was in the grandmother's care in Dane County, Wisconsin and as a result, Judge Reilly terminated the juvenile court's jurisdiction on January 11, 1999.

**D.** **Failure to State a Claim**

Even if the SAC had survived the DHS's challenges pursuant to Rule 12(b)(1), the Court concludes that the SAC failed to state a claim against the DHS and must be dismissed on Rule 12(b)(6).

To maintain an action under § 1983, a plaintiff must show "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010). "For there to be section 1983 liability, there must first be a violation of the plaintiff's constitutional rights." Avalos v. City of Greenwood, 382 F.3d 792, 802 (8th Cir. 2004). The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Matthews v. Eldridge, 424 U.S. 319, 332 (1976). Parents have a liberty interest in the "care, custody and management of their child." Santosky v. Kramer, 455 U.S. 745, 753 (1982).

The SAC alleged that the DHS: (1) failed to notify Cooper of hearings in the juvenile court (SAC, pp. 3, 4); (2) placed custody of her child with the child's maternal grandmother (SAC, p. 4); and (3) labeled Cooper "schizophreniform." SAC, p. 8. The DHS has stated, and Cooper does not dispute, that it was not the DHS's duty to notify Cooper of juvenile court hearings or initiate reunification proceedings. In fact, the SAC does not describe any possible role the DHS would play in such a hearing. The DHS

has submitted that pursuant to statute, the juvenile court notifies parties of upcoming hearings, (Def.'s Mem., p. 6), and only the county attorney can file a petition for reestablishment of the parent/child relationship.  Id., p. 7.  And it is quite evident from the record that it was the juvenile court, not the DHS, that conducted the CHIPS proceedings and placed Cooper's child with the child's maternal grandmother.  The allegations in the SAC cannot amount to any violation by the DHS, which was not involved in the juvenile court proceedings.

Additionally, there is no factual support for Cooper's allegation that the DHS labeled her "schizophreniform."  The only entity that appears to have been involved in a psychological evaluation in connection with the juvenile court proceedings was Hennepin County.   Register of Actions, p. 6 ("County requests full psychological evaluation for mom and an order for release of Wisconsin psychiatric and psychological information.")  The remaining allegations in the SAC all bear on the actions of the Hennepin County juvenile court, its judicial officers and employees, none of whom are defendants in this lawsuit.

In short, the Court cannot determine why Cooper has sued the DHS, which does not seem to have had anything to do with the juvenile court proceedings that led to the loss of Cooper's custody of her child.  The SAC failed to describe what the DHS did or failed to do that supposedly violated Cooper's rights under federal law or the Constitution.  For all these reasons, the Court finds that the SAC failed to state a claim and should be dismissed pursuant to Rule 12(b)(6).

### E.    Dismissal with Prejudice

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Nebraska State Bar Ass'n., 717 F.2d 437, 438–39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  Sellors v. Obama, Civ. No. 13-2484 (SRN/JSM), 2014 WL 1607747, at *14 (D. Minn. April 15, 2014) (Order overruling objections to Report and Recommendation that recommended dismissal of an amended complaint with prejudice due to incurable pleading defects); see also McLean v. United States, 566 F.3d 391, 400–401 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment").

Here, any attempt to amend the SAC is futile because of the insurmountable problems posed by the DHS's immunity under the Eleventh Amendment, the Rooker-Feldman doctrine and the statute of limitations.  As a result, the Court recommends that Cooper's suit against the DHS be dismissed with prejudice.

## V.    RECOMMENDATION

For the reasons set forth above, the Court recommends that:

Defendant's Motion to Dismiss [Docket No. 13] be **GRANTED** and Cooper's suit be **DISMISSED WITH PREJUDICE.**

Dated: April 25, 2016                                        *Janie S. Mayeron*
                                                             JANIE S. MAYERON
                                                             United States Magistrate Judge

## NOTICE

**Filing Objections**:  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date**:  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.